# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

FROYLAN MENDIOLA,
              Appellant,

       v.

DEPARTMENT OF HOMELAND
   SECURITY,
              Agency.

DOCKET NUMBERS
SF-1221-13-0440-W-1
SF-0752-13-0436-I-1

DATE: September 21, 2015

# THIS ORDER IS NONPRECEDENTIAL[1]

Acrivi Coromelas, Esquire, Anne Richardson, Esquire, Barbara Enloe Hadsell, Esquire, and Mary T. Ross, Esquire, Pasadena, California, for the appellant.

Ronald P. Ackerman, Esquire, Culver City, California, for the appellant.

Amy L. Dell, San Diego, California, for the agency.

Janet W. Muller, Chula Vista, California, for the agency.

## BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. See 5 C.F.R. § 1201.117(c).

**REMAND ORDER**

¶1      The agency has filed a petition for review of the initial decision in these individual right of action (IRA) and removal appeals, which ordered corrective action in the IRA appeal, reversed the appellant's removal, and found that the appellant proved his affirmative defenses of whistleblower reprisal and retaliation for protected equal employment opportunity (EEO) activity. For the reasons discussed below, we GRANT the agency's petition for review, VACATE the initial decision, and REMAND the case to the regional office for further adjudication in accordance with this Order.

**BACKGROUND**

¶2      The appellant was a GS-12 Border Patrol Agent (BPA) with the agency's Office of Border Control's Murrieta Station (Murrieta) in Temecula, California. *Mendiola v. Department of Homeland Security*, MSPB Docket No. SF-0752-13-0436-I-1, Initial Appeal File (IAF), Tab 7 at 25-26. On April 16, 2012, he filed a complaint with the Department of Justice (DOJ) alleging that other law enforcement agencies were engaging in racial profiling against individuals of Hispanic/Latino descent and that his superiors were supporting such activity. IAF, Tab 14, Exhibit (Ex.) Y.[2] In particular, the appellant alleged as follows: (1) in response to his allegation that deputy sheriffs from the Riverside County Sheriff's Department were engaging in racial profiling, his watch commander, Field Operations Supervisor V.J.,[3] ordered the appellant's patrol group to arrest every alien that was turned over to Border Patrol by other law enforcement agencies, regardless of whether the alien was likely to abscond; (2) on March 25,

---

[2] On April 1, 2012, the appellant sent an email to agency attorney C.C. making many of the allegations that he subsequently raised in his DOJ complaint. *See* IAF, Tab 14, Ex. W. In his email, the appellant stated that he would file a complaint with DOJ if the agency did not "rectify" the racial profiling matter. *Id.* at 005.

[3] V.J. was the appellant's second-level supervisor. *See* IAF, Tab 34, Hearing Transcript, Day 1 (HT1) at 140, lines 11-19 (testimony of H.V.).

2012, V.J. ordered the appellant to alter an arrest report to conceal racial profiling by the U.S. Forest Service; (3) on April 9, 2012, Supervisory BPA H.V.[4] told the appellant's patrol group that he expected them to "go out there and catch 'bodies'"; and (4) on April 15, 2012, a coworker informed the appellant that Murrieta's lead management official, Patrol Agent in Charge W.D., told his counterparts at other agencies that Border Patrol could "pick up any and all of their aliens." *Id.* at 1-2.

¶3      On May 9, 2012, the appellant filed an addendum to his DOJ complaint alleging that, on May 7, 2012, he witnessed Acting Supervisory BPA R.D. direct a subordinate to falsify an arrest report. IAF, Tab 14, Ex. AA. On May 20, 2012, the appellant filed another complaint with DOJ alleging that he had been harassed by one of his coworkers because of his opposition to racial profiling and that management officials had refused to take any corrective action against the coworker. *Id.*, Ex. CC.

¶4      On June 6, 2012, H.V. assigned the appellant to ride with canine handler J.M., whose vehicle was not equipped with a rack for the appellant's assigned rifle. IAF, Tab 7 at 103 (written statement of H.V.). The appellant objected to the assignment and retrieved his rifle from the armory, as well as the keys to his assigned sedan; however, H.V. told the appellant that he would not be allowed to take his rifle out to the field that day and instructed him to return the rifle and keys. *Id.* at 104. The appellant refused to do so and a standoff ensued, with the appellant telling H.V., "[I]f you want [the rifle] that bad, if you don't want me to take it out to the field, you can take it and put it back yourself." IAF, Tab 36, Hearing Transcript, Day 2 (HT2) at 103, lines 1-2 (testimony of the appellant). H.V. stated that he was "not prepared to do that" and reassigned the appellant to "inside duties," at which point the appellant returned the rifle. HT2 at 103, lines 3, 5-7; IAF, Tab 7 at 105 (written statement of H.V.).

---

[4] H.V. was the appellant's immediate supervisor. *See* HT1 at 140, lines 8-10; HT1 at 142, lines 21-24 (testimony of H.V.).

¶5     H.V. reported the incident to V.J., who spoke with the appellant the following day and discussed the Employee Assistance Program with him.  IAF, Tab 7 at 90, 94 (written statement of V.J.)  According to V.J., the appellant replied, "I'm fine and I don't mean to imply any violence in telling you this but I also have personal guns at home, just so you'll know."  *Id.* at 94.  V.J. then asked the appellant if he was trying to tell him "something more" than that he owned guns, and the appellant denied any other meaning.  *Id.* at 94-95.

¶6     H.V., V.J., the appellant, and three other employees who witnessed the June 6, 2012 standoff incident submitted written accounts of the incident to W.D.[5]  *Id.* at 90-108.  On June 7, 2012, W.D. forwarded the statements to Chief Patrol Agent P.B., along with a memorandum in which W.D. recommended that a fitness-for-duty examination (FFDE) be conducted on the appellant to determine his mental stability to perform the duties of a law enforcement officer.  *Id.* at 89.  On June 13, 2012, the agency revoked the appellant's authority to carry a Government-issued firearm, IAF, Tab 14, Ex. JJ, and the appellant filed a complaint with DOJ regarding that action, *see id.*, Ex. KK-005.

¶7     On June 15, 2012, the appellant filed a complaint with the Disclosure Unit of the Office of Special Counsel (OSC) alleging that H.V.'s June 6, 2012 order denying him access to his rifle and the agency's subsequent revocation of his authority to carry a Government-issued firearm constituted retaliation for his whistleblowing activity.  IAF, Tab 14, Ex. KK.  The appellant raised the following disclosures in his OSC complaint:  his DOJ complaints of April 16, May 20, and June 13, 2012; his May 9, 2012 addendum to his April 16, 2012 complaint; and his report to his command staff in September 2010 that H.V. had ordered him to deny a prisoner medical treatment.  *Id.* at 005-006; *see* IAF, Tab 14, Exs. G, I (memoranda from the appellant regarding the 2010 incident).  In

---

[5] Those employees were Supervisory BPA J.H., Assistant Patrol Agent in Charge W.M., and R.D.  *See* IAF, Tab 7 at 96 (statement of J.H.), 101-02 (statement of W.M.), and 107-08 (statement of R.D.).

July 2012, OSC's Disclosure Unit forwarded the appellant's complaint to its Complaints Examining Unit. IAF, Tab 14, Ex. MM.

¶8 After reviewing the written accounts of the June 6, 2012 incident, Division Chief for Operational Support K.R. issued an order on August 13, 2012, instructing the appellant to undergo a general FFDE. IAF, Tab 7 at 81-83; HT1 at 115, lines 8-15 (testimony of K.R.). Following that examination, K.R. issued an order on September 20, 2013, directing the appellant to undergo a psychiatric FFDE. IAF, Tab 7 at 79-80. The appellant then amended his OSC complaint to allege that the agency ordered him to undergo the FFDEs in reprisal for his whistleblowing activity.[6] *See* IAF, Tab 14, Ex. VV-001. Later, A.M. conducted a psychiatric FFDE of the appellant and concluded that he could not safely and efficiently perform all of the duties of his position. IAF, Tab 7 at 69. Consulting psychiatrist P.P. reviewed the results of the appellant's psychiatric FFDE and concurred with them. *Id.* at 74.

¶9 Based on the medical reports of A.M. and P.P., on February 22, 2013, the agency proposed removing the appellant for inability to perform the essential duties of his position due to a medical condition. *Id.* at 41-43. While the proposed removal was pending, OSC terminated its inquiry into the appellant's allegations and issued a closure letter dated March 15, 2013, and notice of Board appeal rights. IAF, Tab 14, Ex. XX. Following a response to the proposed removal by the appellant, IAF, Tab 7 at 30-40, the deciding official sustained the charge, and the appellant was removed effective April 23, 2013, *id.* at 25-29.

---

[6] Although the record does not include any submissions to OSC from the appellant referencing the FFDEs, OSC's February 22, 2013 letter advising the appellant of its preliminary decision to close its inquiry into his whistleblower complaint states that he alleged that the agency ordered him to undergo the FFDEs in reprisal for his whistleblowing activity. *See* IAF, Tab 14, Ex. VV-001. Thus, the appellant evidently amended his OSC complaint after the agency issued the FFDE orders to add a claim of reprisal based on those orders.

¶10     On April 30, 2013, the appellant filed a Board appeal challenging his removal and the agency's order directing him to undergo a psychiatric FFDE. IAF, Tab 1 at 3; *see* IAF, Tab 20. He requested a hearing. IAF, Tab 1 at 2. On his Board appeal form, he raised claims of whistleblower reprisal and retaliation for protected EEO activity (assisting a coworker in his EEO complaint against the agency).[7] *Id.* at 4-6. The regional office docketed the appellant's claims as separate IRA and removal appeals. IAF, Tab 2; *Mendiola v. Department of Homeland Security*, MSPB Docket No. SF-1221-13-0440-W-1, Initial Appeal File (W-1 IAF), Tab 3. The administrative judge joined the appeals for hearing purposes. IAF, Tab 8.

¶11     Following a hearing, the administrative judge granted the appellant's request for corrective action in his IRA appeal, reversed the appellant's removal, and ordered the appellant reinstated to duty. IAF, Tab 31, Initial Decision (ID). Regarding the IRA appeal, the administrative judge found that the agency ordered the appellant to undergo the FFDE in retaliation for his whistleblowing activities and protected EEO activity. ID at 2-13, 25 n.21. Regarding the removal appeal, the administrative judge found that the agency failed to prove the charge, ID at 13-20, and that the appellant proved his affirmative defenses, ID at 20-25.[8]

---

[7] The appellant also checked the box on the appeal form indicating that he was raising an affirmative defense of race discrimination. IAF, Tab 1 at 7. During the hearing, the administrative judge stated, "[T]he affirmative defense of retaliation based on national origin, which I guess was attached to the original appeal, has been withdrawn." HT1 at 4, lines 22-24. The record does not indicate that the appellant raised a claim of national origin discrimination, however. Thus, it appears that the administrative judge intended to say that the appellant had withdrawn his affirmative defense of race discrimination.

[8] At the beginning of the hearing, the administrative judge stated that, prior to going on the record, "the appellant clarified that the only affirmative defense was retaliation for protected prior EEO activity." HT1 at 4, lines 17-19. Nonetheless, the administrative judge analyzed the affirmative defense of retaliation for "protected whistleblowing activity" in the initial decision. *See* ID at 25. On remand, the administrative judge should clarify whether the appellant is raising an affirmative defense of whistleblower reprisal.

¶12     The agency has filed a petition for review of the initial decision.  *Mendiola v. Department of Homeland Security*, MSPB Docket No. SF-1221-13-0440-W-1, Petition for Review (PFR) File, Tab 1.  The appellant has filed a response in opposition to the petition for review, and the agency has filed a reply to the appellant's response.  PFR File, Tabs 10, 12.

## ANALYSIS

The Appellant's IRA Appeal

*The applicable legal standards*

¶13     The Board has jurisdiction over an IRA appeal if the appellant has exhausted his administrative remedies before OSC and makes nonfrivolous allegations that:  (1) he engaged in whistleblowing activity by making a protected disclosure; and (2) the disclosure was a contributing factor in the agency's decision to take or fail to take a personnel action.[9]  *Yunus v. Department of Veterans Affairs*, 242 F.3d 1367, 1371 (Fed. Cir. 2001).  The appellant bears the burden of showing that he exhausted his remedies before OSC, and the Board's jurisdiction is limited to the issues he raised before OSC. *Coufal v. Department of Justice*, 98 M.S.P.R. 31, ¶ 14 (2004); *see Sazinski v. Department of Housing & Urban Development*, 73 M.S.P.R. 682, 685 (1997) (holding that the scope of an IRA appeal is limited to those disclosures raised before OSC).

¶14     After establishing the Board's jurisdiction in an IRA appeal, the appellant then must establish a prima facie case of whistleblower retaliation by proving by preponderant evidence that he made a protected disclosure that was a contributing factor in a personnel action taken against him.  5 U.S.C. § 1221(e)(1); *Mattil v. Department of State*, 118 M.S.P.R. 662, ¶ 11 (2012).  A

---

[9] It is undisputed that the agency's order directing the appellant to undergo a psychiatric FFDE constitutes a personnel action pursuant to 5 U.S.C. § 2302(a)(2)(A)(x).  PFR File, Tab 1 at 25.

protected disclosure is a disclosure that an appellant reasonably believes evidences a violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. 5 U.S.C. § 2302(b)(8)(A); *Chambers v. Department of the Interior*, 515 F.3d 1362, 1367 (Fed. Cir. 2008). A reasonable belief exists if a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the appellant could reasonably conclude that the actions of the Government evidence one of the categories of wrongdoing listed in section 2302(b)(8)(A). *Lachance v. White*, 174 F.3d 1378, 1381 (Fed. Cir. 1999).

¶15    A protected disclosure is a contributing factor if it affects an agency's decision to take a personnel action in any way. *Dorney v. Department of the Army*, 117 M.S.P.R. 480, ¶ 14 (2012). The most common way of proving the contributing factor element is the "knowledge/timing test." *Chavez v. Department of Veterans Affairs*, 120 M.S.P.R. 285, ¶ 27 (2013). Under that test, an appellant can prove that his disclosure was a contributing factor in a personnel action through evidence that the official taking the personnel action knew of the whistleblowing disclosure and took the personnel action within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action. *Id.* Once an appellant has satisfied the knowledge/timing test, he has demonstrated that a protected disclosure was a contributing factor in a personnel action. *Gonzalez v. Department of Transportation*, 109 M.S.P.R. 250, ¶ 20 (2008).

¶16    If the appellant makes out a prima facie case of whistleblower retaliation, the Board shall order such corrective action as it considers appropriate unless the agency shows by clear and convincing evidence that it would have taken the same personnel action in the absence of the protected disclosure. 5 U.S.C. § 1221(e)(1)-(2); *Chambers v. Department of the Interior*, 116 M.S.P.R. 17, ¶ 12 (2011). Clear and convincing evidence is that measure or degree of proof that produces in the mind of the trier of fact a firm belief as to the allegations sought

to be established; it is a higher standard than the "preponderance of the evidence" standard. *Sutton v. Department of Justice*, 94 M.S.P.R. 4, ¶ 18 (2003), *aff'd*, 97 F. App'x 322 (Fed. Cir. 2004); 5 C.F.R. § 1209.4(e). Evidence only clearly and convincingly supports a conclusion when it does so in the aggregate considering all the pertinent evidence that fairly detracts from that conclusion. *Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012).

*It is unclear what disclosures are at issue in this appeal.*

¶17        During the proceedings below, the administrative judge did not direct the appellant to identify the disclosures at issue in his IRA appeal, and it is unclear what those disclosures are. In response to a question on the appeal form asking him to identify each disclosure, the appellant listed only his April 16, 2012 DOJ complaint. IAF, Tab 1 at 11. In his prehearing submission, however, the appellant indicated that his whistleblowing activity also included his April 1, 2012 email to C.C., the May 9, 2012 addendum to his April 16, 2012 DOJ complaint, his DOJ complaint of May 20, 2012, his June 5, 2012 email to H.V. and V.J. forwarding an email that contained a newspaper article about racial profiling, and his OSC complaint. IAF, Tab 14 at 6-7, Exs. W, AA, CC, FF, KK. Further, in response to a question on the appeal form asking for a chronology of the events concerning the action that the appellant claimed was based on whistleblowing, he also referenced his August 7, 2012 memorandum to P.B. complaining of ongoing harassment, and he specifically noted that he submitted the memorandum 1 week before K.R.'s order directing him to take a general FFDE. *See* IAF, Tab 1 at 12; Tab 14, Ex. QQ.

¶18        Not only are we unable to determine exactly what disclosures are at issue in this IRA appeal based on the appellant's submissions, but the administrative judge's findings regarding the appellant's protected disclosures also are inconsistent and unclear. In the initial decision, the administrative judge found

that the appellant's complaints to C.C.,[10] DOJ, and OSC in early 2012 disclosing what he believed to be racial profiling at Murrieta constituted protected activity under 5 U.S.C. § 2302(b)(8). ID at 11. The administrative judge then stated that these complaints occurred "from April 1 to June 5, 2012," and that "the last protected disclosure" took place 1 day before H.V.'s order prohibiting the appellant from taking his assigned rifle with him on an assignment. ID at 11. As noted above, however, the appellant filed his OSC complaint 9 days *after* H.V.'s June 6, 2012 order directing him not to take his rifle with him on an assignment. *See* IAF, Tab 14, Ex. KK. Moreover, as previously mentioned, the order was one of the alleged instances of whistleblower reprisal that the appellant cited in his OSC complaint and, thus, predated the OSC complaint. *See id.* at 005. Therefore, we find that the administrative judge's statement indicating that the last protected disclosure occurred on June 5, 2012, is inconsistent with his finding that the appellant's OSC complaint was one of the protected disclosures at issue in his IRA appeal.

¶19    In light of the administrative judge's statement regarding the date of the last protected disclosure and the timing of the appellant's OSC complaint, it appears that the administrative judge was not referring to that complaint as "the last protected disclosure." Based on our review of the record, it seems that the administrative judge was instead referring to the appellant's June 5, 2012 email to H.V. and V.J. regarding the newspaper article about racial profiling. *See* IAF, Tab 14, Ex. FF. Thus, the administrative judge appears to have determined that the appellant's June 5, 2012 email was one of the protected disclosures at issue in this appeal.

¶20    As previously stated, however, the scope of an IRA appeal is limited to those disclosures raised before OSC. *Sazinski*, 73 M.S.P.R at 685. The record indicates that the appellant did not identify either his June 5, 2012 email or

---

[10] The administrative judge apparently was referring to the appellant's April 1, 2012 email to C.C. IAF, Tab 14, Ex. W.

another disclosure that the administrative judge found protected—his April 1, 2012 email to C.C.—in his OSC submissions. In that regard, we note that the appellant did not raise either of those emails as a disclosure in the complaint he filed with OSC's Disclosure Unit,[11] IAF, Tab 14, Ex. KK, nor is there any indication in the record that he subsequently raised those emails as disclosures before OSC's Complaints Examining Unit.[12] Thus, it appears that the appellant did not exhaust his administrative remedy before OSC regarding either of those emails.

¶21    Due to the lack of clarity regarding the appellant's disclosures and the other adjudicatory errors in the initial decision, which are discussed further below, it is necessary to remand the IRA appeal for further adjudication and issuance of a new initial decision. On remand, the administrative judge should issue an order directing the appellant to identify each disclosure at issue in this appeal and show that he exhausted his administrative remedy before OSC regarding each alleged protected disclosure. Once the appellant makes such a showing, the administrative judge should determine which disclosures are protected and clearly identify those disclosures in the new initial decision.

---

[11] The appellant did include his April 1, 2012 email to C.C. in the supporting documentation he faxed to OSC's Disclosure Unit on June 18, 2012, in conjunction with his OSC complaint. IAF, Tab 14, Ex. KK-009. Even assuming, however, that submitting the email to OSC's Disclosure Unit was tantamount to raising the email as a disclosure, making disclosures to OSC's Disclosure Unit does not satisfy the exhaustion requirement under 5 U.S.C. § 1214(a)(3). *See Mason v. Department of Homeland Security*, 116 M.S.P.R. 135, ¶ 16 (2011). Although OSC's Disclosure Unit forwarded the appellant's complaint to the Complaints Examining Unit in July 2012, the record does not indicate that it also provided the Complaints Examining Unit any of the supporting documentation that the appellant faxed to the Disclosure Unit on June 18, 2012. *See* IAF, Tab 14, Ex. MM.

[12] OSC's February 22, 2012 letter advising the appellant of its preliminary decision to close its inquiry into his complaint identifies various disclosures that the appellant apparently raised with OSC after filing his OSC complaint in June 2012; however, neither the appellant's April 1, 2012 email to C.C. nor his June 5, 2012 email to H.V. and V.J. are among those disclosures. *See* IAF, Tab 14, Ex. VV.

*The administrative judge's contributing factor analysis is incomplete.*

¶22    An initial decision must identify all material issues of fact and law, summarize the evidence, resolve issues of credibility, and include the administrative judge's conclusions of law and his legal reasoning, as well as the authorities on which that reasoning rests. *Spithaler v. Office of Personnel Management*, 1 M.S.P.R. 587, 589 (1980). Given his decision to grant the appellant's request for corrective action in his IRA appeal, the administrative judge evidently concluded that the appellant established the contributing factor element of his whistleblower reprisal claim. He did not explicitly make such a finding in the initial decision, however. Moreover, although the administrative judge seems to have determined that the appellant proved contributing factor pursuant to the knowledge/timing test, the analysis of the contributing factor element of the appellant's claim in the initial decision directly addresses only the timing prong of that test. *See* ID at 11 (finding that the timing of the appellant's complaints to C.C., DOJ, and OSC clearly satisfied the knowledge/timing test for demonstrating that those disclosures were a contributing factor in the FFDE order inasmuch as the order was issued within a period of time such that a reasonable person could conclude that the disclosures were a contributing factor).

¶23    Consistent with *Spithaler*, after the administrative judge identifies the appellant's protected disclosures on remand, he should make explained findings regarding the contributing factor element of the appellant's whistleblower claim. If he determines that the appellant established contributing factor pursuant to the knowledge/timing test, then he should make explained findings regarding both prongs of the test and directly address the agency's argument that the knowledge prong of the test has not been satisfied because, according to the agency, none of the agency officials involved in the decision to issue the FFDE order knew of the appellant's protected disclosures. PFR File, Tab 1 at 26, 32.

*The administrative judge applied an incorrect standard in assessing the strength of the agency's evidence in support of its action.*

¶24      Once an appellant establishes a prima face case of whistleblowing, the burden shifts to the agency to prove by clear and convincing evidence that it would have taken the same personnel action in the absence of the appellant's whistleblowing. *See Jenkins v. Environmental Protection Agency*, 118 M.S.P.R. 161, ¶ 16 (2012).  In determining whether an agency has met this burden, the Board will consider the following factors:  (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated.  *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999).  The Board does not view these factors as discrete elements, each of which the agency must prove by clear and convincing evidence.  Rather, the Board will weigh the factors together to determine whether the evidence is clear and convincing as a whole.  *Lu v. Department of Homeland Security*, 122 M.S.P.R. 335, ¶ 7 (2015).

¶25      The administrative judge did not explicitly apply the *Carr* factors in determining whether the agency met the clear and convincing evidence burden, nor did he mention the *Carr* factors during the proceedings below.  *See, e.g.*, IAF, Tab 20 (order advising parties of the applicable burdens of proof).  Nonetheless, the initial decision indicates that the administrative judge did consider the first two *Carr* factors inasmuch as he found that K.R.'s decision to issue the FFDE order was based on "scant" evidence and was motivated by retaliation for the appellant's whistleblowing activity.  ID at 12-13.

¶26      In assessing the strength of the agency's evidence in support of its action, the administrative judge stated that an FFDE is appropriate generally when an agency "has a reasonable belief, based on objective evidence, that:  (1) an employee's ability to perform essential job functions will be impaired by a

medical condition; or (2) an employee will pose a direct threat due to a medical condition." ID at 11 (citing *Harris v. Postmaster General*, EEOC Appeal No. 0120050086, 2007 WL 788176 (Mar. 6, 2007)).

¶27 The administrative judge found, in essence, that the agency failed to meet either prong of the above standard. Regarding the first prong, the administrative judge found that there was no evidence that the appellant's ability to perform his duties was impaired by a medical condition. ID at 12. As for the second prong, the administrative judge stated that a belief that an employee poses a direct threat due to a medical condition may not be based on evidence indicating that the employee has been rude, hostile, or disrespectful to a supervisor or that he "exhibited irrational behavior" when he "rudely interrupted, confronted and refused to obey" his supervisor. ID at 12 (citing *Cerge v. Secretary of Homeland Security*, EEOC Appeal No. 0120060363, 2008 WL 559447 (Feb. 20, 2008); *Whiting v. U.S. Postal Service*, EEOC Appeal No. 01A14923, 2003 WL 21145527 (May 8, 2003)).

¶28 The administrative judge erred in applying the above standard in assessing the strength of the agency's evidence. The Office of Personnel Management's regulations set forth at 5 C.F.R. part 339, subpart C, govern an agency's authority to require a medical examination. *Moe v. Department of the Navy*, 119 M.S.P.R. 555, ¶ 10 (2013). When an employee occupies a position that is subject to medical standards or physical requirements, 5 C.F.R. § 339.301(b)(3) authorizes an agency to order a medical examination whenever there is a direct question about the employee's continued capacity to meet the physical or medical requirements of the position. Under 5 C.F.R. § 339.301(e)(1), an agency may order a psychiatric examination (including a psychological assessment) when the result of a current general examination that the agency has the authority to order under section 339.301 indicates no physical explanation for behavior or actions that may affect the safe and efficient performance of the individual or others.

¶29    As a BPA, the appellant was subject to physical requirements and medical standards, including psychological standards. *See* IAF, Tab 11 at 26-27. Therefore, we find that the administrative judge should have applied the standards set forth at 5 C.F.R. § 339.301 in evaluating the strength of the agency's evidence in support of its FFDE order.

> *The administrative judge seemed to find that agency officials had a motive to retaliate against the appellant because they were mentioned in the appellant's disclosures without first determining that those officials knew about the disclosures.*

¶30    When applying the second *Carr* factor, the Board will consider any motive to retaliate on the part of the agency official who ordered the action, as well as any motive to retaliate on the part of other officials who influenced the decision. *See Carr*, 185 F.3d at 1326. In the initial decision, the administrative judge noted that H.V., V.J., R.D., and W.D. were mentioned in the appellant's disclosures, and he found that their statements summarizing the June 6, 2012 incident, as filtered through W.D., led directly to the ordering of the FFDEs. ID at 11. The administrative judge further found that H.V.'s June 6th order was motivated by retaliation for the appellant's protected whistleblowing activity and that K.R.'s decision to order the FFDEs, which, the administrative judge found, relied exclusively on W.D.'s "excessive extrapolation and speculation," similarly resulted from such motivation. ID at 12 n.7 (citing *Staub v. Proctor Hospital*, 131 S. Ct. 1186, 1194 (2011)).

¶31    Although his analysis of the second *Carr* factor is not entirely clear, the administrative judge seemed to find that the agency officials who submitted the statements that K.R. considered in ordering the FFDE had a motive to retaliate against the appellant because they were mentioned in his disclosures. The administrative judge then apparently imputed their retaliatory motive to K.R. so as to conclude that the FFDE was motivated by the appellant's whistleblowing activity. ID at 11-12 & n.7. As noted above, however, the administrative judge did not address the issue of whether the agency officials who provided the

statements regarding the June 6, 2012 incident knew about the pertinent disclosures. The officials clearly would not have had any motive to retaliate against the appellant for those disclosures if they were unware of them. Thus, we find that the administrative judge erred by finding a retaliatory motive on the part of agency officials because they were mentioned in the appellant's disclosures without first determining that those officials were aware of the disclosures.

*The administrative judge did not address the third Carr factor.*

¶32    In finding that the agency did not meet its clear and convincing evidence burden, the administrative judge did not consider the third *Carr* factor—the treatment of similarly situated nonwhistleblowers. *See* ID at 11-13. During the proceedings below, the appellant stated that the agency treated another BPA who was not a whistleblower differently by granting that employee's request to take his own vehicle on patrol when the employee objected to riding with J.M. IAF, Tab 14 at 16-17. The administrative judge should have addressed this argument in analyzing whether the agency satisfied its clear and convincing evidence burden.

¶33    On remand, if the administrative judge finds that the appellant established a prima facie case of whistleblower reprisal, he then must determine whether the agency met its burden to show by clear and convincing evidence that it would have ordered the psychiatric FFDE absent the appellant's protected disclosures. In analyzing that issue, the administrative judge should apply each of the *Carr* factors, reconsider the record as a whole, and make thoroughly reasoned findings that address both the evidence supporting his conclusions and any contradictory evidence.

*The Board lacks the authority to review the appellant's claim of retaliation for his prior protected EEO activity.*

¶34    As noted above, the administrative judge found that the agency ordered the appellant to submit to the FFDE in retaliation for his participation in EEO

complaints filed by another agency employee. ID at 21. Such retaliation is a prohibited personnel practice under 5 U.S.C. § 2302(b)(9)(B). When the agency issued the order for the psychiatric FFDE, the Board lacked jurisdiction to consider an appellant's claim that a personnel action was taken as a result of a prohibited personnel practice described at 5 U.S.C. § 2302(b)(9)(B). Although the Whistleblower Protection Enhancement Act of 2012 (WPEA) expanded the Board's jurisdiction in IRA appeals to include claims of retaliation based on activity protected by section 2302(b)(9)(B), the WPEA did not become effective until after the agency issued the FFDE order, and the Board has held that this change in the law has no retroactive effect. *See Hooker v. Department of Veterans Affairs*, 120 M.S.P.R. 629, ¶¶ 9-15 (2014). Consequently, we find that the Board does not have the authority to review the appellant's claim that the agency issued the FFDE order in retaliation for his prior EEO activity. Therefore, the administrative judge should not have addressed the merits of that claim in the initial decision in the IRA appeal.

The Appellant's Removal Appeal

*The administrative judge applied an incorrect standard in analyzing whether the agency proved its charge.*

¶35    In considering whether the agency proved its charge, the administrative judge stated that, in order to remove an employee for inability to perform the essential duties of his position due to a medical condition, the agency must establish a connection between that condition and "observed deficiencies in performance or conduct, or a *high probability of hazard* when the condition may result in injury to the employee or others because of the kind of work the employee does." ID at 13 (quoting *Spencer v. Department of the Navy*, 73 M.S.P.R. 15, 21 (1997)).

¶36    Applying this standard, the administrative judge found that the agency presented no evidence that the appellant was deficient in the performance of his duties at any time prior to his termination and noted that the agency did not, in

its proposal or decision letter, make any allegation or conclusion that the appellant presented a high probability of hazard because he had a disabling condition that may result in injury to himself or others because of the kind of work he does. ID at 16. The administrative judge acknowledged that A.M.'s psychiatric report did make such a conclusion, inasmuch as A.M. stated that the appellant represented a potential threat of harm to himself or others. Yet, the administrative judge found that this conclusion "seem[ed] to be entirely unsupported by the rest of the report . . . ." ID at 16, 18. The administrative judge therefore found that the agency failed to prove by preponderant evidence its charge of inability to perform the essential duties of a position due to a medical condition. ID at 20.

¶37    In *Slater v. Department of Homeland Security*, 108 M.S.P.R. 419, ¶ 11 (2008), the Board overruled *Spencer* and other Board cases to the extent that they applied the "high probability of hazard" standard. The Board held that this standard is not appropriate in evaluating an employee's fitness to perform the duties of a position, for positions with medical standards or physical requirements or positions subject to medical evaluation programs. *Id.*, ¶¶ 7, 11. The Board held, moreover, that to justify disqualification from such a position based upon a medical condition alone,[13] the agency must show that the condition itself is disqualifying, its recurrence cannot be ruled out, and the duties of the position are such that a recurrence would pose a reasonable probability of substantial harm. *Id.*, ¶ 11; *see* 5 C.F.R. § 339.206.

¶38    As previously noted, the appellant's position had medical standards and physical requirements. *See* IAF, Tab 11 at 26-27. Consequently, we find that, pursuant to *Slater*, the administrative judge should have applied the standard set forth in 5 C.F.R. § 339.206 in determining whether the agency proved its charge.

---

[13] The Board in *Slater* explained that a removal as medically disqualified is equivalent to a removal for inability to perform for medical reasons. *Slater*, 108 M.S.P.R. 419, ¶ 7.

¶39     Because the administrative judge applied an incorrect legal standard in analyzing whether the agency proved its charge, we find it appropriate to remand the appellant's removal appeal for further adjudication.  On remand, the administrative should apply the standard set forth in 5 C.F.R. § 339.206 in determining whether the agency proved its charge and issue a new initial decision, giving appropriate consideration to any additional relevant evidence that is developed on remand.  *See Viana v. Department of the Treasury*, 114 M.S.P.R. 659, ¶ 8 (2010).  As previously mentioned, he also should clarify whether the appellant is raising an affirmative defense of whistleblower reprisal in the removal appeal.  To the extent appropriate, the initial decision may incorporate the administrative judge's previous findings concerning the appellant's affirmative defenses. *See id.*

## ORDER

¶40     For the reasons discussed above, we REMAND this case to the regional office for further adjudication and issuance of a new initial decision in accordance with this Remand Order.


FOR THE BOARD:                         _____
                                       William D. Spencer
                                       Clerk of the Board

Washington, D.C.